IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs June 28, 2005

## STATE OF TENNESSEE v. ALETA RENEE SOUDER

**Appeal from the Criminal Court for Sullivan County**
**No. S47,896     R. Jerry Beck, Judge**

_____

### No. E2004-02190-CCA-R3-CD - August 30, 2005

_____

The defendant, Aleta Renee Souder, appeals her Sullivan County effective incarcerative sentence of 18 months on her guilty-pleaded convictions for possession of more than one-half ounce of marijuana for resale, a Class E felony, two counts of possession of drug paraphernalia, a Class A misdemeanor, and unlawful possession of a switchblade knife, a Class A misdemeanor. The defendant had sought a probationary sentence or some form of alternative sentencing, which the trial court rejected. Our review of the record discloses no basis to disturb the trial court's sentencing decision, and we affirm the judgments.

**Tenn. R. App. P. 3; Judgments of the Criminal Court are Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which ALAN E. GLENN and ROBERT W. WEDEMEYER, JJ., joined.

Stephen M. Wallace, District Public Defender; and Joe Harrison, Assistant Public Defender, for the Appellant, Aleta Renee Souder.

Paul G. Summers, Attorney General & Reporter; Jennifer L. Bledsoe, Assistant Attorney General; H. Greeley Wells, Jr., District Attorney General; and Joseph E. Perrin, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

The sole issue on appeal is whether the trial court erred in denying probation or alternative sentencing to the defendant.

On June 25, 2003, the Sullivan County Grand Jury returned a presentment charging the defendant with possession of more than one-half ounce of marijuana for resale, Tenn. Code Ann. § 39-17-417(a)(4), (g)(1) (2003), two counts of possession of drug paraphernalia, *id*. § 39-17-425(a)(1), (2), and unlawful possession of a switchblade knife, *id*. § 39-17-1302(a)(7), (d)(4). The defendant entered into a plea agreement with the state whereby she entered an *Alford* plea to the

marijuana possession charge and pleaded guilty to the remaining counts with an agreed sentence of 18 months for the marijuana possession, 11 months and 29 days for each of count of paraphernalia possession, and 11 months and 29 days for the switchblade knife possession. It was further agreed that the sentences were to be served concurrently and that the defendant was a Range I standard offender. The manner of service of the sentences was reserved for the trial court's determination.

The transcript of the plea submission hearing conducted on April 12, 2004 reflects the following factual underpinning for the defendant's guilty pleas:

On February the 6th, 2003, members of the Kingsport Police Department Vice Unit executed a search warrant at the Defendant's home at 121 ½ Virgil Avenue, Kingsport, Sullivan County, Tennessee. Upon knocking and announcing, the defendant opened the door. She was advised of the search warrant. The officer stepped into her residence. In addition to being advised of the search warrant and its execution, she was Mirandized, and after being advised she indicated that she understood her rights. She agreed to speak with the officer. Detective Chambers asked her if there was any marijuana in the house, and she said that only what she used for medicinal purposes. He asked her where it was, and she indicated that it was in the night stand drawer beside her bed. The search of the home revealed that number one, in a night stand drawer beside the bed was several tin containers found that had marijuana seeds, there were rolling papers, pipes, other materials that were found in a separate drawer with approximately a quarter pound of marijuana that was packaged up in four large bags of marijuana, and packaged for resale. There were a number of plastic bags that were found, many with the baggie corners cut off. Also some of the baggies being cut in half would be consistent with the packaging of marijuana for resale. Additionally scales were found that would be used in the packaging of the marijuana in small amounts. On the front door was a handwritten note that said "no sale until 9:00 a.m." This note was taken into custody. The defendant was asked how much marijuana the officers would find, and she indicated about a quarter or a quarter of a pound which was consistent with the four large baggies of marijuana. She was asked as to an individual that was there at the home at the time of the search warrant if he had anything to do with it; and she indicated "no"; that all of the marijuana that was found was in fact hers. She was asked how long she had been selling marijuana, and she said "not as long as you think." When the detective asked her how long that was, she said that the officers didn't understand, that the last time they were at her house, they had seized the money that she had; and that she had no choice but to sell

-2-

marijuana to make ends meet. The defendant was placed under arrest. The marijuana that was seized was sent to the T.B.I. Crime Laboratory. As to the four bags of marijuana, those tested positive for Schedule VI controlled substance in the amount of 109.8 grams. Also the other amounts of marijuana that were seized as well as marijuana cigarettes were rolled, all proved to be positive for marijuana in an amount that would be approximately a hundred and eighty to a hundred and ninety grams of marijuana. . . . The – in the search of the defendant's residence, there was also located a switchblade knife which would be a prohibited weapon. The defendant acknowledged to the possession of that weapon.

The sentencing hearing was conducted on August 31, 2004. The 47-year-old defendant testified that she was divorced and lived alone. She had two grown children, and the third child was a minor living in South Carolina with the father. The defendant graduated from high school and was currently disabled because of her health; she said that she was receiving $552 per month as supplemental security income (SSI) from the government.

In terms of her health problems, the defendant testified that for 17 years she had fibromyalgia and chronic fatigue syndrome. Additionally, the defendant said that she had high blood pressure and had been diagnosed with hepatitis C. According to the defendant, her maladies had "left [her] basically bedridden." She took numerous prescription medications on a daily basis, including an antihistamine, blood pressure medicine, muscle relaxer, a sleeping aid and a cholesterol reducer. In addition, she periodically took an antidepressant. Furthermore, the defendant recounted that she suffered anxiety attacks and had a nervous compulsion to pull out her hair, known as trichotellomania.

The defendant testified that she seldom drank alcohol. She did begin using marijuana when she was 17 or 18 years old, but then she quit for many years. Her marijuana use resumed in the past four or five years, and she said that the marijuana was "the only thing that [she] had been able to find so far to help medicinally."

Regarding previous offenses, the defendant testified that she had received judicial diversion for an offense that occurred in 2001. The diversion was later revoked in 2002 because it was discovered that she had a conviction when she was 20 years old. The defendant explained that she was unaware that the earlier conviction made her ineligible for judicial diversion. Nevertheless, the defendant said that she successfully followed all of the conditions of probation for the 2001 offense.

On cross-examination, the defendant insisted that the marijuana seized from her residence was for personal, medicinal use; she flatly denied selling any marijuana. She said that she thought having almost a quarter of a pound of marijuana would "last [her] a while like that."

Regarding the sign taped to her front door, the defendant testified that it was a yard sale sign from a month earlier, which she had not taken off the door.

The defendant denied admitting to Detective Chambers that she had sold marijuana. She thought she "[p]robably" could pass a drug test because she had "only smoked maybe two or three times in the last five or six months," during which time her case was pending. She claimed at first not to remember from whom she purchased the marijuana, but she then declined to provide any names because she did not "think that would be right to do that."

The state filed and relied upon the presentence investigation report that had been prepared.

After hearing the defendant's testimony and considering the presentence investigation report, the trial judge denied probation and alternative sentencing. The court explained its ruling as follows:

> The Court denies the petition. The Court finds that the . . . defendant in this case has a prior history of criminal conviction, and criminal behavior. The Court doesn't feel like she has been perfectly candid with the Court about whether or not she is selling marijuana. The Court notices in the pre-sentence report that these drugs were wrapped in plastic baggies indicative of purposes of resale in which she had denied that she is in the business of reselling. So therefore, for all of these reasons, the petition is denied. She'll be given thirty days to report to jail . . . .[1]

On appeal, the defendant complains that the trial court failed to consider that she does not pose a danger to society, does not have a long history of criminal conduct, and does not require restraint beyond what is imposed by her physical condition. She argues that the presumption of alternative sentencing was not rebutted in this case, and she requests that her sentence be modified to probation, intensive probation, or community corrections.

We begin with our familiar standard of review. When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a *de novo* review of the record with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d) (2003). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991); *see State v. Hooper*, 29 S.W.3d 1, 5 (Tenn. 2000). "The burden of showing that the sentence is improper is upon the appellant." *Ashby*, 823 S.W.2d at 169. In the event the record fails to demonstrate the required consideration by the trial court, review of the sentence is purely *de novo*. *Id*. If appellate review,

---

[1] The trial court set the defendant's appeal bond at $5,000, and she is currently on bond pending this appeal.

however, reflects that the trial court properly considered all relevant factors and its findings of fact are adequately supported by the record, this court must affirm the sentence, "even if we would have preferred a different result." *State v. Fletcher*, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

We first note that in ordering an incarcerative sentence, the trial court issued brief remarks. Even so, we are convinced that the trial court considered the sentencing principles and all relevant facts and circumstances in arriving at its decision. The length of the defendant's sentence was not a contested issue and did not require the trial court's consideration. The only issue before the trial court was the manner of service of the defendant's sentence in light of the defendant's application for probation or alternative sentencing. The record demonstrates that the trial court relied heavily on the defendant's lack of candor and her prior criminal convictions and behavior. We will not disturb the trial court's assessment of the defendant's credibility, as the trial court was in the best position to make that determination. *See State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996). Consequently, we will conduct our *de novo* review with a presumption that the trial court's determinations are correct. *See Ashby*, 823 S.W.2d at 169.

It is undisputed that the defendant was eligible for probation, having received an 18-month sentence. *See* Tenn. Code Ann. § 40-35-303(a) (2003). However, as we have pointed out on numerous occasions, the determination of entitlement to full probation necessarily requires a separate inquiry from that of determining whether a defendant is entitled to a less beneficent alternative sentence. *See State v. Bingham*, 910 S.W.2d 448, 455 (Tenn. Crim. App. 1995), *overruled on other grounds by State v. Hooper*, 29 S.W.3d 1 (Tenn. 2000). A defendant is required to establish her "suitability for full probation as distinguished from h[er] favorable candidacy for alternative sentencing in general." *State v. Mounger*, 7 S.W.3d 70, 78 (Tenn. Crim. App. 1999); *see Bingham*, 910 S.W.2d at 455-56. A defendant seeking full probation bears the burden of showing that probation will "subserve the ends of justice and the best interest of both the public and the defendant." *State v. Dykes*, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990), *overruled on other grounds by State v. Hooper*, 29 S.W.3d 1 (Tenn. 2000).

Regarding considerations relevant to probation, the trial court is directed to consider the nature and circumstances of the offense, the defendant's criminal record, the defendant's background and social history, his or her present condition, including physical and mental condition, and the deterrent effect on the defendant. *See State v. Kendrick*, 10 S.W.3d 650, 656 (Tenn. Crim. App. 1999). The court should also consider the potential for rehabilitation or treatment of the defendant in determining the appropriate sentence. *See* Tenn. Code Ann. § 40-35-103(5) (2003). Moreover, in *State v. Bunch*, 646 S.W.2d 158, 160 (Tenn. 1983), the supreme court held that truthfulness is certainly a factor which the court may consider in deciding whether to grant or deny probation.

In addition to eligibility for probation, the defendant, as a standard offender convicted of a Class E felony and Class A misdemeanors, was entitled to the presumption of favorable candidacy for alternative sentencing in the absence of evidence to the contrary. *See* Tenn. Code Ann. § 40-35-102(6) (2003) (presumption extended to an offender who is "an especially mitigated or

standard offender convicted of a Class C, D or E felony"). Even so, favorable candidacy does not provide that all offenders who meet the criteria are entitled to such relief; rather, it requires that sentencing issues be determined by the facts and circumstances presented in each case. *State v. Bolling*, 75 S.W.3d 418, 420 (Tenn. Crim. App. 2001). The presumption of favorable candidacy for alternative sentencing may be rebutted, for instance, by a showing that confinement may be necessary to "protect society by restraining a defendant who has a long history of criminal conduct" or that "measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant." *See* Tenn. Code Ann. § 40-35-103(1)(A), (C) (2003).

Turning first to the matter of probation, the record reveals that the defendant failed to meet her burden of demonstrating that probation will "subserve the ends of justice and the best interest of both the public and the defendant." *Dykes*, 803 S.W.2d at 259. On appeal, the defendant relies heavily on her physical and mental disabilities as showing that she does not pose a danger to society. Her pre-existing disabilities, however, do not amount to an effective demonstration that the defendant is indeed a suitable candidate for probation, nor are they sufficient to rebut the presumption of correctness applied to the trial court's findings. Furthermore, we note that the defendant's disabilities apparently did not interfere with her marijuana sales efforts; the danger that she poses to society clearly has not been neutralized by any physical or mental limitations. Her untruthfulness with the trial court about selling marijuana also stunts any momentum that might have favored a suspended sentence. Her insistence that she did not sell marijuana, although she had nearly a quarter of a pound of marijuana that was packaged consistent with resale, although scales for weighing marijuana were found in the residence, and although a handwritten note "no sale until 9:00 a.m." was posted on her door, was patently unbelievable. Accordingly, we decline to disturb the trial court's rejection of probation in this case.

Regarding a less beneficent alternative sentence, we likewise conclude that the trial court did not err in finding sufficient evidence existed to rebut the presumption of favorable candidacy for alternative sentencing. Although the trial court relied upon the defendant's untruthfulness as a basis for denying an alternative sentence, and although a sentencing court may appropriately consider "the defendant's candor and credibility, or lack thereof, as indicators of [her] potential for rehabilitation," s*ee, e.g., State v. Michael K. Miller,* No. W2003-01621-CCA-R3-CD, slip op. at 3 (Tenn. Crim. App., Jackson, July 27, 2004), we have recognized that "absent other factors, untruthfulness to the court will not *per se* warrant a denial of all alternative sentencing" in general, as opposed to probation in particular, *see State v. Tammy Cheak Trent,* No. E2003-01726-CCA-R3-CD, slip op. at 9 (Tenn. Crim. App., Knoxville, Oct. 20, 2004); *see also State v. Nunley*, 22 S.W.3d 282, 286 (Tenn. Crim. App. 1999) (stating that although the factor "'social history' must be considered "in determining whether to grant probation . . . , social history is not specifically mentioned by the code as a factor to be used in overcoming the presumption of suitability for alternative sentences"). Nevertheless, the presumption of favorable candidacy for an alternative sentence may be overcome by the need to "protect society by restraining a defendant who has a long history of criminal conduct." Tenn. Code Ann. § 40-35-103(1)(A) (2003). The defendant admitted that she used marijuana years earlier and again during the past four or five years, although she maintained that her recent use of the illicit drug was to "relieve some of the terrible pain" and

-6-

to "avoid prescriptions for any more heavy medication." Significantly, the defendant admitted to using the drug while her present case was pending in the trial court. The defendant was convicted in 2000 of possession of marijuana and of possession of drug paraphernalia. In 1978, she was convicted of marijuana possession, of violation of the open container law, and of aiding and abetting prostitution. Even if we discount the importance of the 1978 convictions, we discern a history of criminal conduct that is long enough to support the trial court's imposition of an 18-month incarcerative sentence.

On appeal, the defendant for the first time asserts that she should have been considered for placement in a community corrections program. She makes this assertion in the "Conclusion" section of her appellate brief, but she cites no authority and offers no supporting argument. That sentencing option, in our opinion, has been waived. *See* R. Tenn. Ct. Crim. App. 10(b).

In our view, the record supports the manner of service of the sentence imposed. The defendant failed to carry her burden to show entitlement to probation, and the presumption of alternative sentencing was sufficiently rebutted in this case. The trial court thus did not err by imposing a sentence of confinement.

Accordingly, we affirm the judgments of the trial court.

_____
JAMES CURWOOD WITT, JR., JUDGE